**Paul N. LEVY, et al., Appellants,**

v.

**SCHNABEL FOUNDATION COMPANY, Appellee.**

**No. 89–1002.**

District of Columbia Court of Appeals.

Argued Nov. 2, 1990.
Decided Jan. 11, 1991.

Herman M. Braude, with whom Paul V. Waters, Washington, D.C., was on the brief, for appellants.

Alexander W. Whitaker, with whom James C. Gregg, Washington, D.C., was on the brief, for appellee.

Before ROGERS, Chief Judge, SCHWELB and FARRELL, Associate Judges.

SCHWELB, Associate Judge:

This is an appeal by Paul N. Levy, Gale R. Levy and Franklin Park Liquor, Inc. (the Levys) from an order of the trial court setting aside a jury verdict in their favor in the amount of $400,000 and granting the motion of appellee Schnabel Foundation Company (Schnabel) for judgment notwithstanding the verdict. The Levys contend that the evidence that Schnabel negligently caused damage to their building was sufficient to support the jury's verdict. Although we view the case as a close one, and the proof of the standard of care as rather unorthodox, we agree with the Levys, reverse the judgment n.o.v. in Schnabel's favor, and remand for further proceedings.

## I

### THE TRIAL COURT PROCEEDINGS

The evidence at trial established that the Levys own and occupy a four-story building (the "Levy building") at 940 14th Street, N.W. in Washington, D.C. At the time when this controversy arose, Ambassador Associates (Ambassador) was developing property at 1400 K Street, N.W., adjacent to the Levy Building. Ambassador engaged Omni Construction Co. ("Omni") as its prime contractor to construct a twelve-story office building at the K Street site. Omni subcontracted with Schnabel to perform sheeting, shoring and underpinning to protect adjacent properties.

The 1400 K Street project required the excavation of a forty-foot hole for a three-level parking garage which was to be built below street level. The earth around the entire perimeter of the construction site had to be held back to protect the adjacent streets from caving in and to protect the adjoining buildings, including the Levy building, from moving. This earth retention process is known as "sheeting, shoring and underpinning." Sheeting and shoring supports the exposed sides of the excavation. Underpinning is the support and stabilization of adjacent buildings from below.

During the course of construction, the Levy building moved both vertically and laterally. Omni notified Schnabel that it had detected movement in the vicinity of the underpinning operation. In response, Schnabel installed tie rods in the basement of the Levy building to attempt to hold the building walls together. The Levy building "racked" (twisted), however, and cracks appeared in both the exterior and interior walls. The columns of the building moved, windows cracked, and doors would not close. There was testimony that movement continued to the time of trial.

As a result of these events, the Levys brought an action against Schnabel and several other defendants.[1] They alleged in their complaint that their building was damaged because Schnabel Foundation Company had negligently failed to design and build an adequate sheeting, shoring and underpinning system during the excavation of the adjoining property. Schnabel

---

1. The Levys' claims against other defendants were settled. The terms of the settlement are not a part of the record.

denied negligence and, in March 1989, the case came on for a jury trial in the Superior Court.

At trial, the Levys offered the testimony of Carl C. Hansen, who was qualified as an expert witness in the area of structural engineering. During the course of his testimony, Mr. Hansen reviewed a soils report prepared by Schnabel Engineering Associates (SEA), an engineering company,[2] which recommended a system of sheeting, shoring and underpinning for support of the Levy building which was materially different from the system which the defendant Schnabel Foundation Company actually used. It was Mr. Hansen's opinion that if Schnabel had used "bracket piles," as SEA had recommended, this would have provided insurance against the movement which damaged the Levys' property. Mr. Hansen stated that "specifically concerning the underpinning of the Levy building, I do not understand why [Schnabel] ignored two of the main recommendations of [SEA]." He later added that this question "has never been satisfactorily answered to me."

Mr. Hansen also testified that the standard of care applicable to contractors engaged in sheeting, shoring and underpinning is "to take all the steps necessary to prevent any movement that's going to cause damage."[3] It was his opinion that Schnabel's failure to take the steps recommended by SEA caused the movement and damage to the Levy Building, and that Schnabel's work fell below the standard of care in the industry.

Schnabel's construction manager on the 1400 K Street project, Phillip K. DiPirro, was qualified as an expert witness in the area of sheeting, shoring and underpinning. He testified on behalf of Schnabel.[4] On cross-examination, Mr. DiPirro was questioned regarding two sections of the District of Columbia Building Code on which the Levys rely to support their claims of negligence. These two provisions read in pertinent part as follows:

12 DCMR § 1304.2 (1986)

All excavations shall be protected by sheet piling or adequate shores in accordance with the requirements of the Minimum Wage and Industrial Safety Board's Construction Safety Standards, effective on or after August 1, 1968, so that the sides shall not cave in and so that adjoining buildings and property shall not be damaged....

12 DCMR § 1306.1 (1986)

... Every portion of every structure in process of construction, alteration, repair, or removal, and all neighboring property and structures or any portion thereof affected by such process or by an excavation, shall be sufficiently supported and protected by the building owner performing such operation; and all necessary precautions for protection of life and limb shall be taken by said building owner and his agents who shall restore the adjoining property and structures removed or damaged by him or them to as good condition as they were immediately prior to his or their operation.

Mr. DiPirro acknowledged that the Building Code sections quoted above were in effect at the time Schnabel performed the sheeting, shoring and underpinning work, and that they established a standard of care for Schnabel's work. He explicitly agreed on several occasions that the standard of care for designing and implementing sheeting, shoring and underpinning is to provide a system so that adjoining property, like plaintiffs' building, would not be

---

**2.** Schnabel Foundation Company and SEA are separate companies. Each has its own field of expertise. SEA specializes in geotechnical engineering. Schnabel Foundation Company is engaged in the design and construction of sheeting, shoring, and underpinning.

**3.** Mr. Hansen was also asked, however whether a designer could "guarantee no movement of underpinning." He responded that

I don't know of any way that any of them could guarantee it. It's—you're working with unknowns. It's hard. It's a difficult job. I have enough problems with your profession. I wouldn't take underpinning and sheeting and shoring for anything.

**4.** Only a comparatively small part of Mr. DiPirro's testimony has been provided to us in the parties' appendices.

damaged.[5] He also stated that Schnabel was among those responsible under Section 1306.1 for providing support to prevent settlement of adjoining buildings.

At the conclusion of trial, the judge instructed the jury with regard to the standard of care for a reasonable sheeting, shoring and underpinning contractor. He stated, among other things, that a violation of Sections 1304.2 and 1306.1 which caused plaintiffs' injury would be evidence of negligence which could properly be considered by the jury. In instructing the jury with regard to Section 1304.2, however, the judge omitted the phrase "in accordance with the requirements of the Minimum Wage and Industrial Safety Board's Construction Safety Standards." The section, as the jury heard it, read as follows:

> All excavations shall be protected by sheet piling or adequate shores ... so that the sides shall not cave in and so that adjoining building and property shall not be damaged.

The jurors found Schnabel negligent and awarded the Levys $400,000. Schnabel filed a motion for judgment n.o.v. contending, among other things, that the Levys had failed to offer sufficient evidence to establish the applicable standard of care. The trial judge granted the motion in a written order in which he reasoned, in pertinent part, as follows:

> Reduced to its essentials, Mr. Hansen's testimony[6] with respect to the standard of care was (1) damage occurred to the building as a result of earth movement and, therefore, the earth retention system employed was improperly designed, and (2) the defendant should have used the system which he would have used, i.e. the one recommended by Schnabel Engineering. It is elementary that the happening of an accident or occurrence of an injury does not mean that any

party breached the applicable standard of care. See Standardized Civil Jury Instructions for the District of Columbia, 5–18. To accept the plaintiffs' argument that a violation of the applicable standard of care was proven by a showing that their building moved as a result of earth movement, in effect, would be to hold the defendant strictly liable. This theory of recovery was not—and probably could not have been—asserted as a basis for recovery in this case. Furthermore, it is now axiomatic that an expert's testimony that he would have done things differently is insufficient to establish the standard of care in a case where expert testimony on point is required. *Toy v. District of Columbia,* 549 A.2d 1, 7 (D.C.1988).

The judge also rejected the Levys' contention that the cited Building Code sections supported a finding of negligence.

This appeal followed.

## II

## LEGAL DISCUSSION

### A. *The Applicable Standards.*

"A judgment notwithstanding the verdict should be granted only when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion as to the proper judgment." *Lewis v. Washington Metro. Area Transit Auth.,* 463 A.2d 666, 669 (D.C.1983). We must give the Levys "the advantage of every fair and reasonable inference that the evidence can justify." *Guardian Ins. Co. v. Anacostia Chrysler–Plymouth, Inc.,* 320 A.2d 315, 317 (D.C.1974) (quoting 5A J. MOORE, FEDERAL PRACTICE ¶ 50.02[1], at 2326–27 (2d ed. 1974)). As this court explained in *District of Columbia v. Coo-*

---

5. Mr. DiPirro's testimony included the following:

> Q: So is the standard, then, in designing and implementing sheeting, shoring and underpinning, putting in adequate shores and sheeting so that adjoining buildings are not damaged?
> A: Yes.

> Q: That's the standard upon which Schnabel was held accountable, *to do their work so that the adjoining building isn't damaged,* is that correct?
> A: Yes.

6. The judge did not mention Mr. DiPirro's testimony.

*per,* 445 A.2d 652, 655 (D.C.1982) (en banc) (citation and footnote omitted):

> Only in extreme instances where no reasonable person could reach a verdict in favor of the plaintiff on the evidence presented should directed verdict be granted and only in such cases is a judgment *non obstante verdicto* proper. For jurors are the triers of fact, and where there is evidence upon which reasonable persons might differ as to negligence and other elements of liability, those questions must be decided by the jury.

■ The plaintiff in a negligence action bears the burden of proof on three issues: the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury. *Toy, supra,* 549 A.2d at 6. Where, as is undisputedly true in this case, the subject presented is so distinctly related to some science, profession, or occupation, as to be beyond the ken of a lay juror, the plaintiff must prove the applicable standard of care and a deviation therefrom by expert testimony. *Id.* In a case in which expert testimony is required, it is insufficient for the expert to state his opinion as to what he or she would have done under similar circumstances. *Id.* at 7. Rather, the jury must be informed of "recognized standards regarding the proper ... procedures under the circumstances." *Id.*

Schnabel contends that the Levys failed to prove the applicable standard of care or any deviation from it, and that the judge's entry of judgment notwithstanding the verdict was therefore correct. The Levys respond that they established the applicable standard by the testimony of the two expert witnesses, their own and Schnabel's. They also claim that they met their burden by showing violations of the previously quoted sections of the Building Code. We agree with the Levys that the expert testimony was sufficient, albeit barely so, to require submission of the case to the jury, and eschew decision of any other issue.

*B. The Sufficiency of the Expert Testimony.*

The Levys argue that two separate parts of Mr. Hansen's testimony adequately established the applicable standard of care. They rely first on his discussion of the SEA proposal and second, perhaps more heavily, on his more general articulation.

■ That Mr. Hansen would have followed SEA's proposal is not, in itself, sufficient proof of a recognized standard for those engaged in sheeting, shoring, and underpinning. *See Toy, supra,* 549 A.2d at 7. Mr. Hansen did not testify that the methodology suggested by SEA was in general use throughout the nation, or in any particular geographic area. Indeed, Mr. Hansen was never requested to, and did not, describe the procedures and methods ordinarily used by competent persons engaged in that line of work, nor did he specify how Schnabel fell short of any such general industry practice.

■ Mr. Hansen did state, in substance, that no explanation had been provided regarding Schnabel's failure to take the proposed precautions, and that he could not understand why the SEA proposal was not followed. Where an expert in the field has testified that specific precautionary measures would have reduced or eliminated the risk to the plaintiff, and where the defendant has failed to present any explanation of its failure to utilize these measures, some inference of negligence might rationally be drawn. Given the requirement of our case law that "recognized" standards be established, however, it is doubtful whether Mr. Hansen's testimony regarding the recommendations in SEA's soils report would be sufficient, alone, to warrant submission of the case to the jury.

■ Both Mr. Hansen and Mr. DiPirro testified, however, that the applicable standard of care for persons engaged in sheeting, shoring and underpinning was to take all necessary steps to prevent any movement that would cause damage to adjacent properties. To be sure, Mr. Hansen was not altogether unequivocal. As previously noted, see page 1253, note 3, *supra,* he questioned anyone's ability to guarantee that no damage would result, and ex-

pressed his own apparently semi-facetious gratitude for not being in an occupation with such problems. In response to a question regarding the standard of care required of someone performing sheeting, shoring and underpinning, he referred to the prevention of major structural damage as the "goal." He added, however, that it was

> incumbent upon the contractor to take all the steps necessary to prevent any movement that's going to cause damage.

Mr. DiPirro likewise provided no testimonial description of the practices which a prudent person engaged in sheeting, shoring and underpinning would have utilized under circumstances such as those here presented. He acknowledged quite unequivocally, however, that the standard upon which Schnabel was held accountable was "to do their [sic] work so that the adjoining building isn't damaged." For purposes of a motion for judgment n.o.v., this testimony must be taken as true. Insofar as there may have been ambiguities in Mr. Hansen's testimony, it is our obligation to resolve them in the Levys' favor. *Guardian Ins. Co., supra,* 320 A.2d at 317.

It is, of course, possible that both experts misapprehended the questions propounded to them. Their articulation of the standard of care might be viewed as sounding more like a lofty goal, or perhaps like a perceived rule of law, than like a description of acceptable practices. Counsel for Schnabel had an adequate opportunity, however, to clarify the matter through further examination of the witnesses. We are obliged to take the record as we find it, and must address what the witnesses said rather than speculate as to what they may have meant. According to both experts, the standard of care required whatever precautions would prevent damage to the Levy Building.

Moreover, a standard of care which effectively requires Schnabel either to provide sufficient support to neighboring property to avoid damage or, in the alternative, to decline the job is not necessarily unreasonable in this particular context. It comports with a plausible reading of the Building Regulations.[7] The Levys, after all, are innocent parties. They have no control over who does what on their neighbor's land. Schnabel had the option to accept or decline the sub-contract. As between Schnabel and the Levys, it is arguably equitable for a party like Schnabel, who had a choice with respect to taking the job, and who thus could have avoided the damage, to be responsible for the expense in case of damage to the Levys' property. To saddle the Levys with the cost of repairing the damage, on the other hand, might be viewed as incompatible with basic notions of fairness.[8]

---

7. One problem with the Levys' argument regarding the Building Regulations, however, is that the ellipses inserted into § 1304.2, see page 1254, *supra,* could be construed as altering its natural meaning. That Regulation, as written, see page 1253, *supra,* provides in effect that all excavations shall be protected in accordance with the Minimum Wage and Industrial Safety Board's Construction Safety Standards, *"so that* ... adjoining buildings and property shall not be damaged." (Emphasis added). The duty imposed appears to be in compliance with the Safety Board's standards; the *goal* or aim is to avoid damage to adjoining buildings and property. By substituting ellipses for the reference to the agency standards, the Levys may have converted a lofty goal into a mandatory standard of care.

The Levys' reliance on § 1306.1 also raises problems. That section refers, by its terms, to the obligation of the owner or his agents. It appears to be undisputed that Schnabel was an independent contractor.

In light of our holding that the expert testimony was sufficient to preclude the entry of judgment n.o.v., we need not decide whether the Building Regulations were violated or whether these alleged violations constituted proof or evidence of negligence. *See Lewis, supra,* 463 A.2d at 673–74. We hold only that one plausible construction of the regulations is consistent with the two experts' articulation of the standard of care.

8. *But see* RESTATEMENT (SECOND) OF TORTS, § 817 & comment d (1979) (landowner strictly liable at common law for injury to neighbor's unimproved land by landowner's withdrawal of lateral or subjacent support, but liable only for negligence for damage to improvements which would not have occurred if neighbor had not improved his land). We need not and do not decide whether the Building Code has altered the common law rule.

## III

### THE REMAND

As an alternative to its request for judgment n.o.v., Schnabel asked the trial court to order a new trial or to grant a remittitur. Schnabel also cross-claimed against codefendants who settled with the Levys, seeking contribution from them. Since he granted judgment for Schnabel, the judge found it unnecessary to rule on these matters, and we express no views with respect to them. ·

Accordingly, the order granting Schnabel judgment notwithstanding the verdict is vacated. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*