36 F.3d 127
 308 U.S.App.D.C. 313
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Anthony A. Stokes, Appellant,
v.
CHILDREN'S HOSPITAL, INC., et al. Appellee.
 No. 92-7145.
 United States Court of Appeals, District of Columbia Circuit.
 May 3, 1994.
 
 Before MIKVA, Chief Judge, EDWARDS and SILBERMAN, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This appeal was considered on the record from the United States District Court for the District of Columbia, on the briefs of counsel, and on oral argument. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(b).
 
 
 2
 ORDERED AND ADJUDGED that the district court's judgments from which this appeal has been taken be affirmed.
 
 
 3
 The clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 41(a).
 
 MEMORANDUM
 
 4
 This action arises out of a medical malpractice suit that Appellant Anthony Stokes brought against Children's Hospital, Inc. and Group Health Association, Inc. based on their alleged failure to diagnose and treat his arteriovenous malformation. Appellant contends that the district court erred in granting Group Health Association's motion for a directed verdict and entering judgment as a matter of law for Children's Hospital. We affirm both judgments of the district court.
 
 I.
 
 5
 On July 27, 1978, Anthony Stokes was taken to Group Health Association, Inc. ("GHA") after he experienced seizures and fainting. Attending physicians at GHA detected no ailment and referred Appellant to Children's Hospital ("Children's" or "Hospital") for neurological testing. Dr. Miryam Davis, a consulting neurologist at Children's Hospital, examined Appellant and detected a murmur and an orbital bruit. She ordered a CT scan, EEG, and cardiac evaluation in response. Dr. Brallier, a radiologist at Children's Hospital, performed the CT scan and reported the results as normal. The Hospital discharged Appellant after four days with a diagnosis of unknown etiology.
 
 
 6
 Following his discharge from the Hospital, physicians at GHA treated Appellant for five years with a daily dosage of dilantin, an anti-convulsive drug. Appellant had five seizures in those five years. In 1988, Appellant experienced another four seizures and underwent another CT scan, this time at Howard University Hospital, which revealed a large arteriovenous malformation ("AVM") of approximately six centimeters. Because Appellant's AVM was too large to be operable, his doctors at Howard University prescribed proton beam radiation therapy. The results of that therapy are still undetermined.
 
 
 7
 Appellant filed a medical malpractice suit against Children's Hospital, Inc. and Group Health Association, Inc. alleging that they were negligent in failing to diagnose and treat his AVM in 1978. Specifically, Appellant claimed that Children's Hospital radiologist, Dr. Brallier, breached the applicable standard of care by interpreting Appellant's 1978 CT scan as normal and that Dr. Davis violated the applicable standard of care by failing to order a follow-up CT scan and arteriogram on Appellant. Appellant also claimed that GHA breached the applicable standard of care by failing to order a follow-up CT scan and arteriogram and failing to follow-up on Dr. Davis's recommendations. Appellant claims that these failures proximately caused him injury by preventing the early detection of his AVM and foreclosing its surgical removal.
 
 
 8
 This case went to trial before a jury on June 22, 1992. Before the case was submitted to the jury, the district court granted GHA's motion for a directed verdict but denied the same motion filed by Children's Hospital. When the trial resulted in a hung jury, the district court declared a mistrial on July 6, 1992. On November 4, 1992, the district court granted Children's Hospital's motion for judgment as a matter of law. This appeal followed.
 
 II.
 A. Procedural Issues
 
 9
 Appellant argues that the law of the case barred the district court from entering judgment as a matter of law for Children's Hospital. Appellant contends that the district court's denial of Children's Hospital's motion for directed verdict and, alternatively, the comments made by the district court in response to a jury question--that there was some evidence on both sides regarding the applicable standard of care--constituted the law of the case and barred the court from granting the Hospital's motion for judgment as a matter of law. We find no procedural bar to the district court's entry of judgment as a matter of law for Children's Hospital.
 
 Fed.R.Civ.P. 50(b) provides that:
 
 10
 [W]henever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion.... If no verdict was returned, the court may, in disposing of the renewed motion, direct the entry of judgment as a matter of law or may order a new trial.
 
 
 11
 As such, the district court's denial of Children's Hospital's motion for a directed verdict did not deprive the trial court of its authority to enter judgment as a matter of law.
 
 
 12
 Appellant cites no authority to support his claim that the district court's response to jury questions constituted the law of the case. The district court believed that its comments fell "far short of a finding that a standard of care has been shown by sufficient evidence." We agree. Moreover, because the court's statements were never docketed, they were unenforceable and unappealable. Accordingly, any "finding" made in this manner by the district court was subject to change until docketed. Matter of American Precision Vibrator Co., 863 F.2d 428, 429 (5th Cir.1989). We therefore proceed to the merits of the court's decision to grant a directed verdict for GHA and a judgement as a matter of law for Children's Hospital.
 
 B. Standard of Review
 
 13
 This court reviews the trial court's directed verdict and entry of judgment as a matter of law de novo. A directed verdict or entry of judgment as a matter of law is warranted only if "the evidence, together with all inferences that can reasonably be drawn therefrom, is so one-sided that reasonable men could not disagree on the verdict." Carter v. Duncan-Huggins, Ltd., 727 F.2d 1225, 1227 (D.C.Cir.1984). To establish a prima facie case of medical malpractice, a plaintiff must establish (1) the applicable standard of care; (2) a violation of this standard of care; (3) a causal relationship between that violation and a resulting harm. Meek v. Shepard, 484 A.2d 579 (D.C.1984). If Appellant failed to present evidence regarding any one of these necessary elements, then no reasonable juror could reach a verdict in Appellant's favor. See Street v. Hedgepath, 607 A.2d 1238, 1245 (D.C.1992).
 
 C. Children's Hospital
 
 14
 Appellant's case against Children's Hospital relied upon two theories. First, Appellant claimed that Dr. Brallier, the Children's Hospital radiologist, violated the prevailing standard of care by interpreting Appellant's CT scan as normal when, in fact, it revealed an AVM. Second, Appellant claimed that Dr. Davis, acting as an agent of Children's Hospital, negligently failed to review Appellant's CT scan and to pursue follow-up diagnostic procedures. Because Appellant neither established the standard of care that applied to Dr. Brallier nor identified the injuries that stemmed from Dr. Davis's alleged breach of care, we affirm the district court's entry of judgment as a matter of law for Children's Hospital.
 
 1. Radiologists Dr. Brallier
 
 15
 In establishing the applicable standard of care, "it is insufficient for the expert to state his opinion as to what he or she would have done under similar circumstances.... Rather the jury must be informed of 'recognized standards requiring the proper ... procedures under the circumstances.' " Levy v. Schnabel Found. Co., 584 A.2d 1251, 1255 (D.C.App.1991) (internal citation omitted). Plaintiff relied exclusively on the testimony of Dr. Nabgushan S. Rao, a neurologist affiliated with D.C. General Hospital and Howard University, to establish the recognized standards that governed radiologists' CT scan readings in 1978. Dr. Rao testified that he "believe[d] the standard of care was violated because the CT scan was abnormal--to me." Yet, he testified that up to 80% of the competent radiologists who might have looked at Appellant's CT scan in 1978 could have misread it as normal. Dr. Rao further testified that the standard of care governing radiologists' readings of CT scans in 1978 "all depends upon the individual case." Because Dr. Rao did not establish an objective standard of care that a majority of radiologists adhered to in 1978, the evidence presented at trial, construed in the light most favorable to Appellant, cannot support a finding that Dr. Brallier breached an applicable standard of care when he treated Appellant in 1978.
 
 2. Dr. Davis
 
 16
 Appellant also relied exclusively on Dr. Rao's testimony to establish the applicable standard of care for neurologists in 1978. Dr. Rao testified that the prevailing standard of care for neurologists in 1978 required a repeat CT scan if an orbital bruit was detected and an arteriogram if the bruit persisted. Several expert witnesses appearing on behalf of Children's Hospital testified that the prevailing standard of care required neither a repeat CT scan or arteriogram if the patient's EEG was normal and his condition stable as was Appellant's in 1978. Although the district court concluded that "no reasonable jury could have assigned greater weight to Dr. Rao's testimony than to that of defendant's experts," we do not agree. Nonetheless, we affirm the district court because the evidence presented at trial fails to establish that Dr. Davis's alleged violation of the applicable standard of care proximately caused Appellant harm.
 
 
 17
 Dr. Rao testified that, if Appellant's AVM had been detected in 1978, doctors would have considered surgical removal, embolization and proton beam radiation therapy as their primary treatment options. However, Dr. Rao failed to establish that Appellant was a likely candidate for any of these treatment options or that they had any likelihood of success. Dr. Rao testified that surgery would have been "very high" on his list of proposed treatments, but several experts from Children's Hospital testified that continued surveillance, rather than surgery or radiation therapy, would have been the preferred course of treatment for Appellant in 1978. Dr. Alfred Leusenhopp, the only neurosurgeon to testify, said that in 1978, no neurosurgeon would have performed surgery on a child who had experienced a seizure and then recovered. In addition, Appellant failed to establish that his AVM was operable in 1978. Although Dr. Rao testified that it was, his testimony on that issue was inadmissible because he was not qualified as an expert in neurosurgery. We are unpersuaded by Appellant's claim that Appellees waived this admissibility argument. The district court ruled that Dr. Rao was qualified as an expert witness in neurology but expressly declared:
 
 
 18
 Doctor, we ruled ... that you would not be permitted to testify to the standard of care for neurosurgeons, but you would be permitted to make a diagnosis or diagnoses, recommend options for neurosurgeons and also to say that you had known successful AVM operations.
 
 
 19
 Appellant also failed to establish that embolization or proton beam therapy were viable treatment options for him in 1978. Again, Dr. Rao was the only expert witness to testify on Appellant's behalf regarding these treatment methods. Dr. Rao did not claim any experience with or expertise regarding these treatment methods in 1978, and he did not attest that Appellant would have been a likely candidate for either treatment. Dr. Rao acknowledged that only one institution in the country performed proton beam radiation therapy in 1978; he did not know the extent to which embolization was used at that time. In sum, Dr. Rao's testimony, construed in the light most favorable to the Appellant, failed to establish that it was more likely than not that surgery, embolization or proton beam therapy would have been performed on the Appellant had his AVM been diagnosed in 1978.
 
 
 20
 Appellant also failed to establish that he suffered any injury as a result of Children's Hospital's failure to diagnose and treat his AVM in 1978. Even if surgery, embolization or proton beam treatment had been performed on Appellant in 1978, the evidence indicates that he would still have been at-risk of continued seizures and been required to take anti-convulsive medicine. Although surgery might have reduced Appellant's risk of bleeds, he experienced no bleeds between 1978 and 1990. Finally, Appellant may be better off for not having undergone proton beam therapy in 1978 because, if he had, he would now be at high risk of leukemia or other forms of blood cancer. Dr. Rao himself testified that the results of such therapy were poor in 1978 and that the technology now was "probably ... better." Because Appellant failed to establish the standard of care applicable to Dr. Brallier or the harm that flowed from Dr. Davis's alleged breach of the applicable standard of care, we affirm the district court's entry of judgment as a matter of law in favor of Children's Hospital. D. Group Health Association
 
 
 21
 Dr. Rao was the only expert to testify on Appellant's behalf regarding the standard of care that applied to GHA attending physicians in 1978. According to his testimony, the applicable standard of care required GHA's neurologists to (1) check for the presence of an orbital bruit and (2) order additional diagnostic studies if a bruit was present. Although Appellant claims that the GHA doctors breached this standard of care, we find no evidence to support his claim.
 
 
 22
 GHA doctors Judith Hogg, M.D. and Morris Osborn, M.D. testified at trial that, in treating Appellant both before and after he was seen at Children's Hospital, they listened for an orbital bruit but did not detect one. They decided not to order additional diagnostic tests for Appellant because the anticonvulsant medication they had prescribed for him controlled his seizures. The conduct that Drs. Hogg and Osborn described in their testimony was undisputed below and consistent with the standard of care articulated by Dr. Rao. As such, the evidence presented at trial, construed in the light most favorable to the Appellant, failed to establish that the GHA attending physicians breached the applicable standard of care when treating Appellant in 1978. Appellant also claims that his attending GHA physicians breached their duty to review Appellant's CT scan and Children's Hospital medical records. Because Appellant failed to establish that any harm flowed from GHA's alleged breach of these duties, we affirm the district court's directed verdict for GHA.
 
 III.
 
 23
 Construed in the light most favorable to Appellant, the evidence introduced below failed to establish that Children's Hospital, Inc. or Group Health Association, Inc. breached the applicable standard of care when evaluating and treating Appellant in 1978 or that any such breach proximately caused Appellant any injury. The district court's judgments are
 
 
 24
 Affirmed.