**NATIONAL TELEPHONE COOPERATIVE ASSOCIATION,**
Appellee,

v.

**EXXON MOBIL CORPORATION,**
**A New Jersey Corporation,**
Appellant.

**No. 99–7124.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 16, 2001.

Decided April 3, 2001.

Arthur H. Jones, Jr. argued the cause for appellant. With him on the briefs were Robert T. Lehman, Cynthia J. Morris, and Heather E. Gange.

Donald B. Mitchell, Jr. argued the cause for appellee. With him on the brief was James H. Hulme.

Before: EDWARDS, Chief Judge, GINSBURG, and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINBURG.

GINSBURG, Circuit Judge:

■ The plaintiff in this case won a jury verdict and judgment on the theory that the defendant negligently performed an environmental remediation; the central question before us is whether the plaintiff at trial established the standard of care, which is necessary to support the judgment in its favor. Under the law of the District of Columbia, if the applicable standard of care in a negligence action is "beyond the ken of the average layperson," then the plaintiff must establish that standard through the testimony of an expert. *District of Columbia v. Arnold & Porter*, 756 A.2d 427, 433 (2000) (quoting *Messina v. District of Columbia*, 663 A.2d 535, 538 (D.C.1995)). Specifically,

> the expert must clearly articulate and [refer to] a standard of care by which the defendant's actions can be measured .... Thus the expert must clearly relate the standard of care to the practices in fact generally followed by [similarly situated parties] or to some standard nationally recognized by such [parties].

*Id.* (quoting *Phillips v. District of Columbia*, 714 A.2d 768, 773 (D.C.1998)). To similar effect, "[t]he personal opinion of the testifying expert as to what he or she would do in a particular case, without reference to a standard of care, is insufficient

to prove the applicable standard of care." *Travers v. District of Columbia,* 672 A.2d 566, 568 (D.C.1996).

No one doubts that the standard of care in this case is beyond the ken of the average layperson. In mounting its case, therefore, the plaintiff introduced expert testimony; but its expert described the standard of care with respect only to an ultimate goal that the defendant failed to meet, not with respect to any "practices in fact generally followed" or "to some standard [that is] nationally recognized" from which the defendant departed. *Arnold & Porter,* 756 A.2d at 433. Under *Arnold & Porter* and the cases from which it springs, such testimony is insufficient for the plaintiff to prevail and we therefore must reverse the judgment of the district court.

## I. Background

The National Telephone Cooperative Association (NTCA) sued the Exxon Mobil Corporation (Exxon) in district court, alleging negligence. At the time of the events at issue, the NTCA owned and occupied an office building in the District of Columbia that abutted a gas station owned by Exxon. In March 1990 the NTCA discovered a black liquid seeping through a crack in the basement of its office building. The NTCA reported the problem to Exxon, which sent environmental engineers to examine the site and to repair the basement wall. Exxon also conducted a comprehensive investigation of petroleum contamination on its own property and reported the problem to the D.C. Department of Consumer and Regulatory Affairs (DCRA). Exxon then submitted to the DCRA, and the DCRA approved, a Corrective Action Plan (CAP) pursuant to which Exxon would remediate petroleum contamination on its property.

There were two basic components to the CAP: a "pump and treat" system that used a series of wells containing pumps to control the migration of groundwater and to remove gasoline from the water table; and a "soil vapor extraction" (SVE) system

that removed vaporous gasoline from the soil. The CAP further detailed a number of specific measures that Exxon would take and the types of technology that it would use. According to the CAP, the result would be to "ensure that hydrogeologic control is established at the site to prevent further off-site migration, as well as eliminate residual soil hydrocarbons that could [contaminate the groundwater]."

Notwithstanding Exxon's remediation efforts, the leakage of black liquid through the crack in the wall of the NTCA's office building recurred in March 1995. The NTCA was then poised to sell its office building but the deal fell through owing to the leak. The NTCA finally sold the building three years later.

The NTCA proceeded to the jury on the theory that Exxon had been negligent in its remediation. The NTCA argued, and the district court agreed, that Exxon's own CAP supplied the operative standard of care. The expert who testified in support of the NTCA's theory of negligence, Mr. Kent Campbell, took issue with four aspects of Exxon's remediation: (1) the type of pump Exxon installed in the wells; (2) its failure to excavate more dirt in installing underground storage tanks; (3) its installation of an insufficient number of wells to capture groundwater; and (4) its failure to install and to run an adequate SVE system. As Exxon clarified in cross–examining him, Campbell expressly grounded these criticisms in his own views and did not relate them to any general practice or recognized standard. Although Campbell did not specify exactly how Exxon should have achieved hydrogeologic control, he did testify that it should have achieved it and that Exxon's loss of hydrogeologic control coincided with recurrence of the leakage.

The NTCA contended that the leakage, in addition to damaging its building, delayed sale of the building for three years and thus both deprived it of the return it would have realized from investing the proceeds of an earlier sale, and owing to a

change in market conditions forced it to pay more for a long-term lease on the building to which it eventually moved. The jury found in favor of the NTCA, awarding it $30,000 in damages for harm to the building and $2,459,357 in damages arising from the delayed sale. The district court entered judgment on that verdict and Exxon appealed, challenging both the determination that it was negligent and the award of damages for delaying the sale of the building.

## II. Analysis

Initially Exxon maintains that the doctrine of primary jurisdiction forecloses a finding of negligence; specifically, Exxon claims the DCRA's exercise of its regulatory authority in approving Exxon's remediation plan gave the DCRA primary jurisdiction, to which the district court owed deference. *See United States v. Western Pac. R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body"). We review the district court's decision to the contrary only for abuse of discretion. *See Environmental Technology Council v. Sierra Club,* 98 F.3d 774, 789 (4th Cir.1996); *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 947–48 (10th Cir.1995).

Exxon failed to show that the DCRA oversees a comprehensive regulatory scheme that in any way would be disturbed by the instant action. At most the record suggests that the DCRA saw nothing in Exxon's remediation plan that violated the agency's regulations—not that the DCRA so closely supervised the remediation planning or implementation as in practice to prescribe the standard of care that would govern it. The district court was well within its discretion, therefore, in hewing to the principle that conduct complying with administrative regulations may nonetheless be negligent. *See,* *e.g.,* Restatement (Second) of Torts § 288C.

Exxon also claims that "because the standard of care for a service station remediation is not readily discernible by a lay person, the District Court erred in not instructing the jury that the NTCA had to establish that standard through expert testimony." Exxon's sole basis for objecting to the lack of a jury instruction on this point is *District of Columbia v. Mitchell,* 533 A.2d 629, 649–50 (D.C.1987), in which the Court of Appeals refused to reinstate a verdict for the plaintiff in a medical malpractice case because such an instruction had not been given. *Id.* at 649–50. Even if *Mitchell* can be read as stating a per se rule—a proposition for which it has never been cited—Exxon must show prejudice in order to secure reversal upon the basis of a missing jury instruction. *See Material Supply Int'l, Inc. v. Sunmatch Indus. Co.,* 146 F.3d 983, 992 (D.C.Cir.1998). In this case any error was assuredly harmless: the district court instructed the jury that the NTCA bore the burden of proof and that the relevant standard of care was that of a specialist performing remediation; Campbell's was undisputedly expert testimony, and there was no other evidence from which the jury could have concluded that the NTCA carried its burden.

Exxon next argues that the NTCA did not fulfill its obligation to explain to the jury the operative standard of care for the remediation. The NTCA's answer is that it permissibly treated Exxon's own CAP as supplying that standard. The NTCA's principal theory is that the objective of the CAP—to "ensure that hydrogeologic control is established"—itself supplies the relevant standard of care. If so, then liability would be established by the jury finding that Exxon's loss of hydrogeologic control caused the renewed leakage into the NTCA's adjoining property.

This theory is more akin to strict liability or to negligence per se—both of which the district court expressly rejected—than

to simple negligence; it entails no effort to connect the damage to any particular conduct in which Exxon did or did not engage. The theory is therefore inconsistent with the District of Columbia's requirement that a standard of care beyond the grasp of a lay jury be related either to "practices in fact generally followed" or "to some standard [that is] nationally recognized." *Arnold & Porter,* 756 A.2d at 433. We cannot deem the CAP's stated goal of "ensur[ing] hydrogeologic control" a standard of care on this record because it stands unrelated to any accepted practice or standard to which Exxon should have but failed to conform.

The lone precedent that NTCA marshals in hope of bridging this gap is *Levy v. Schnabel Found. Co.,* 584 A.2d 1251 (D.C. 1991), which involved allegedly negligent construction; the court held that "tak[ing] all necessary steps to prevent any movement that would cause damage to adjacent properties" constituted a standard of care. *Id.* at 1255. The court so held, however, only because there was expert testimony— indeed, an expert for each party had specifically testified—that this was "the applicable standard of care for persons engaged in [the defendant's line of work]." *Id.* Therefore, although this "articulation of the standard of care might be viewed as sounding more like a lofty goal," *id.* at 1256, the "expert testimony was sufficient, albeit barely so" to establish it as the applicable standard of care. *Id.* at 1255. In this case the NTCA cannot claim the benefit of *Schnabel* because it introduced no evidence that "ensuring hydrogeologic control" was not merely a goal but was in fact the prevailing practice or a national standard applicable to Exxon's efforts at environmental remediation.

■ The NTCA fares no better with its argument that the prescriptions in the CAP supply a standard of conduct to which Exxon might be held. The central problem with the argument is that the NTCA's expert, Campbell, identified no practice or provision in the CAP from which Exxon departed in any way that might have caused the harm. Indeed, Campbell consistently couched his criticisms in terms of his personal opinion, which does not suffice under the law of the District of Columbia. *See Travers,* 672 A.2d at 568 (quoted above at pages 154– 55). Consider: One of Campbell's four criticisms of the remediation effort was that Exxon drilled too few wells to capture the groundwater; yet that aspect of Exxon's remediation effort fully complied with the CAP. Two of Campbell's criticisms related, respectively, to the type of pump Exxon installed in the wells and to the amount of dirt it excavated in installing storage tanks; these issues were not addressed in the CAP, however, nor did Campbell attempt to tie them thereto. Campbell's final criticism was that Exxon was late in installing the SVE system called for in the CAP, and then ran it less than half the time it was in place; although this might identify a breach of the CAP, the NTCA adduced no evidence that causally connects it to Exxon's loss of hydrogeologic control and the ensuing harm to the building.

Finally, the NTCA suggests that "the regulations cited in the trial court's 'evidence of negligence' jury charge are relevant evidence the Jury could consider in determining the common law standard of care." These regulations avail it not with respect to the standard of care, however, as the NTCA did not introduce expert testimony explaining their application, as required in the District of Columbia. *See McNeil Pharm. v. Hawkins,* 686 A.2d 567, 583 (D.C.1996) ("this jurisdiction has required expert testimony to explain the applicability of statutes where the statute is relied upon as establishing the standard of care").

In sum, the NTCA failed to establish a standard of care consistent with its theory of negligence. As that is fatal to the NTCA's case, we do not reach Exxon's other arguments.

### III. Conclusion

Because the NTCA did not introduce evidence of the standard of care through expert testimony as required under the law of the District of Columbia, it did not prove its case against Exxon. The judgment of the district court in favor of the NTCA is therefore reversed and vacated, and this case is remanded to the district court for it to enter judgment in favor of Exxon.

*So ordered.*